UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

PETER L. HUSTON,

                Plaintiff,

v.                                                 1:24-cv-1461 (AMN/DJS)

SUNY AT ALBANY, SUNY THE OFFICE OF
GENERAL COUNSEL & SECRETARY THE
RESEARCH FOUNDATION FOR SUNY, and
ERIC FLETCHER Code Compliance (Manager),

                Defendants.

---

**APPEARANCES:**                                          **OF COUNSEL:**

**PETER L HUSTON**
149 Lincoln Ave
First Floor
Albany, New York 12206
Plaintiff, *pro se*

**HON. LETITIA JAMES**                              **KAITLIN N. VIGARS, ESQ.**
New York State Attorney General
The Capitol
Albany, New York 12224
*Attorneys for Defendants*

**Hon. Anne M. Nardacci, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I.    INTRODUCTION

On November 27, 2024, *pro se* Plaintiff Peter L. Huston commenced this action against the State University of New York at Albany ("SUNY Albany"), the State University of New York Office of General Counsel (together, the "SUNY Defendants"), and Eric Fletcher pursuant to the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* ("ADA"). *See* Dkt. No. 1

1

("Complaint").[1]  On January 9, 2025, Defendants moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  *See* Dkt. No. 9-2 at 8, 13 (the "Motion").[2]  On January 30, 2025, Plaintiff filed a response in opposition to the Motion, *see* Dkt. No. 11, and on February 6, 2025, Defendants filed a reply in further support of the Motion, *see* Dkt. No. 12.  For the reasons set for below, the Motion is granted.

## II.   BACKGROUND

Unless otherwise noted, the following facts are drawn from the Complaint, its attachments, materials it incorporates by reference, and Plaintiff's opposition to Defendants' motion to dismiss. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (On a motion to dismiss, "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference" (citation omitted)); *see also Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion.").  The allegations are assumed to be true for purposes of ruling on the Motion, *see Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (*per curiam*), or are otherwise matters of public record, *Williams v. N.Y.C. Hous. Auth.*, 816 Fed. Appx. 532, 534 (2d Cir. 2020).

---

[1] Plaintiff lists "SUNY The Office of General Counsel & Secretary; The Research Foundation for SUNY," as a single Defendant.  Dkt. No. 1 at 2.  In their Motion, Defendants note that "The Research Foundation for SUNY" is an entirely separate, private entity, and that the Complaint makes no allegations pertaining to it.  *See* Dkt. No. 9-2 at 7 n.1.  Plaintiff does not offer any clarity in his response.  *See* Dkt. No. 11-1.  To the extent that a separate defendant exists, the Court *sua sponte* dismisses the Complaint against it without prejudice.  *See, e.g., Russo v. Duprey*, No. 9:12–CV–1815 (LEK/ATB), 2014 WL 948851, at *3 (N.D.N.Y. Mar. 11, 2014) (dismissing claims against certain defendants where they "are named . . . but are not mentioned anywhere in the body of the [pleading]").

[2] Citations to docket entries utilize the pagination generated by CM/ECF, the Court's electronic filing system, and not the documents' internal pagination.

Plaintiff has ADHD and PTSD, which he asserts was triggered by the work environment at Defendant SUNY Albany. Dkt. No. 1 at ¶ 97. Plaintiff alleges that he was employed by Defendant SUNY Albany as a Campus Safety Specialist ("CSS") between December 2022 and June 2023. *Id.* at ¶ 6. As part of his job as a CSS, Plaintiff monitored and maintained numerous fire protective systems and conducted evacuation drills on a regular basis. *Id.*

Generally, Plaintiff alleges that the CSS position required extensive training because the university has "over one hundred buildings and rents others, and they all need evacuation drills" involving different systems. *Id.* at ¶¶ 7-8. Plaintiff alleges that SUNY Albany did not have a designated individual responsible for this training. *Id.* at ¶ 9. Instead, Plaintiff alleges that his immediate supervisor, Mark Baldwin, "did not communicate job duties, performance expectations, and other necessary matters properly[,]" and did not provide orientation or on-boarding. *Id.* at ¶ 37. Additionally, Defendant Eric Fletcher, who was Mr. Baldwin's supervisor, also provided insufficient training. *Id.* at ¶ 39. Plaintiff alleges that, in place of training, Defendant Fletcher "harassed [Plaintiff] in [a] way that took advantage of his PTSD and ADHD[,] purposely attacking him in ways to raise his anxiety and lower his job performance[.]" *Id.* at ¶ 47.

Plaintiff also alleges that Defendant Fletcher only hired Plaintiff when there were no other options, and that Defendant Fletcher "felt threatened by [Plaintiff] once he realized he had an underling who was more intelligent and more educated than he was and more skilled in using the written English language and highly motivated to see that university safety standards were kept at a high level." *Id.* at ¶ 61. Based on this alleged animus, Plaintiff alleges that Defendant Fletcher "with[eld] training, consistently assign[ed] [Plaintiff] to duties for which he was not properly trained, and then wr[ote] so-called counseling memos that never came with any actual counseling or additional training[.]" *Id.* at ¶ 65.

Eventually, after receiving three counseling memos, Plaintiff applied for ADHD accommodations. *Id.* at ¶ 99. Plaintiff alleges that Defendant Fletcher initially did not provide accommodations, and instead, "sent near daily emails stating [Plaintiff's] work performance was sub-standard, purposely keeping [Plaintiff] distracted and stressed[.]" *Id.* at ¶ 102. Later, the Complaint alleges that "the University employee who handled ADA requests[] sent [Defendant] Fletcher requests for accommodation" but that Defendant Fletcher would then "comply with the letter of the agreement [regarding accommodations] but not follow the spirit of it, and thereby not provide any accommodations." *Id.* at ¶ 103. Plaintiff also asserts that "[t]he University itself accepted [his] request and the appropriateness and need for implementing a training program with ADA Accommodations . . . . [but] [w]hen these requests were passed along to [Defendant] Fletcher, he never . . . implemented any training program that included a single ADA Accommodation." Dkt. No. 11-1 at 5.

Plaintiff later received a fourth counseling memo which accused him of "racist behavior." Dkt. No. 1 at ¶ 122. Plaintiff alleges this counseling memo was "completely explained and responded to in a rebuttal" and that nothing came of it. *Id.*

Finally, after six months of employment, Plaintiff was dismissed. *Id.* at ¶ 131. Plaintiff alleges that no accommodations were ever implemented prior to his dismissal. *Id.*

In this suit, Plaintiff alleges that his termination, the failure to implement accommodations, and Defendant Fletcher's "bullying" behavior throughout his employment and training violated his rights under the ADA. *Id.* at 3. Though Plaintiff does not cite particular provisions of the ADA, the Court construes the Complaint as asserting claims pursuant to Title I (discrimination)

4

and Title V (retaliation).³  Plaintiff seeks a declaratory judgment finding that the Defendants violated the law, compensatory and punitive damages, costs, an order "directing Defendants to remove Eric Fletcher from his positions[,]" an order ensuring "proper training for any and all employees" of the campus fire safety program, an order ensuring "that bullying and harassment in the University Fire Safety office be ended and conditions set so that it will not reoccur[,]" and an order mandating "proper management capable of performing their duties in the Campus Fire Safety Office[.]"  *Id.* at 18.  Plaintiff also seeks reinstatement, though he conditions his request on the implementation of "proper training[.]"  *See* Dkt. No. 11-1 at 6.⁴

## III. STANDARD OF REVIEW

A motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) is properly granted "when the court lacks statutory or constitutional authority to adjudicate it." *Cayuga Indian Nation of New York v. Vill. of Union Springs*, 293 F. Supp. 2d 183, 187 (N.D.N.Y. 2003) (citing *Luckett v. Bure*, 290 F.3d 493, 496 (2d Cir. 2002)).  To resolve such a motion, the court "accepts as true all the factual allegations in the complaint and must draw all reasonable inferences in favor of the plaintiff."  *Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003) (citing *Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton Coll.*, 128 F.3d 59, 63 (2d Cir. 1997)).

---

³ Defendants have done the same, and Plaintiff does not contest such an interpretation of the Complaint.  Dkt. No. 12 at 6.

⁴ Plaintiff requests conditional reinstatement for the first time in his opposition to the Motion.  *See* Dkt. No. 11-1 at 6.  However, due to Plaintiff's *pro se* status, the Court may consider the request. *See Walker*, 717 F.3d at 122 n.1; *Davila v. Lang*, 343 F. Supp. 3d 254, 267 (S.D.N.Y. 2018) ("A *pro se* plaintiff may not raise 'entirely new' causes of action for the first time in his opposition papers, but the Court may consider new claims appearing for the first time in briefing if 'the claims could have been asserted based on the facts alleged in the complaint.'" (citation omitted)). Defendants do not respond to the new request for reinstatement in their Reply brief.  *See* Dkt. No. 12.

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal sufficiency of a party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007). In considering legal sufficiency, a court must accept as true all well-pled facts in the complaint and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). This presumption, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleadings, the court may consider documents that are "integral" to the pleadings even if they are neither physically attached to, nor incorporated by reference into, the pleadings. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers*, 282 F.3d at 152-53).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to sho[w] that the pleader is entitled to relief," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (alteration in original) (quotation omitted). Under this standard, a pleading's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed," *id.* at 570.

"[I]n a *pro se* case . . . the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2003) (quoting, *inter alia*, *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). The Second Circuit has held that courts are obligated to "'make reasonable allowances to protect *pro se* litigants'" from inadvertently forfeiting legal rights merely because they lack a legal education. *Id.* (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

## IV. DISCUSSION

In support of dismissal, Defendants argue that 1) sovereign immunity bars the claims against the SUNY Defendants and Defendant Fletcher in his official capacity, and 2) that the claims against Defendant Fletcher in his individual capacity are impermissible under the ADA. *See generally* Dkt. No. 9-2.

### A. Rule 12(b)(1) - Sovereign Immunity

Sovereign immunity bars a suit in federal court against a state. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54-55 (1996). Courts recognize three exceptions to sovereign immunity. "First, a State may waive its Eleventh Amendment defense." *Winokur v. Off. of Ct. Admin.*, 190 F. Supp. 2d 444, 448 (E.D.N.Y. 2002) (citing *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999)). "Second, Congress may abrogate the sovereign immunity of the States by acting pursuant to a grant of constitutional authority." *Id.* (citing *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 80 (2000)). The Second Circuit has held that these two exceptions do not apply to claims brought pursuant to Titles I and V of the ADA. *See Yerdon v. Poitras*, 120 F.4th 1150, 1153-55 (2d Cir. 2024); *see also Penird v. Better*, 5:19-CV-1146 (MAD/TWD), 2021 WL 3077853, at *4 (N.D.N.Y. July 21, 2021) ("It is firmly established that Titles I and V of the ADA do not abrogate states' sovereign immunity . . . . [and that] New York State has not waived its sovereign immunity under Titles I or V of the ADA" (citations omitted)).

7

Under the third exception, espoused in *Ex parte Young*, 209 U.S. 123 (1908), "a plaintiff may sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for prospective, injunctive relief from violations of federal law." *State Emps. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 95 (2d Cir. 2007) (citation omitted). "[T]his exception allows a plaintiff to seek prospective injunctive relief from a state official sued in his or her official capacity *who has authority to effectuate that relief*[.]" *Salvana v. N.Y. Dep't of Corr. & Cmty. Supervision*, No. 5:21-CV-00735 (BKS/ML), 2022 WL 17083088, at *4 (N.D.N.Y. Nov. 18, 2022) (emphasis added); *see Campbell v. City of Waterbury*, 585 F. Supp. 3d 194, 203 (D. Conn. 2022) ("the *Ex Parte Young* exception does not apply to claims against state officials who lack authority to implement the requested prospective injunctive relief"). However, the exception "has no application in suits against the States and their agencies, which are barred regardless of the relief sought." *Mann v. N.Y. State Ct. of Appeals*, No. 21-cv-49 (MAD/CFH), 2021 WL 5040236, at *5 (N.D.N.Y. Oct. 29, 2021) (quoting *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993)).

The Court finds that the claims against the SUNY Defendants, regardless of the relief sought, are barred by sovereign immunity because "SUNY is an arm of the state and thus is entitled to sovereign immunity." *Marsh-Godreau v. SUNY College at Potsdam*, 8:15-cv-0437 (LEK/CFH), 2016 WL 1049004, at *3 (N.D.N.Y. Mar. 11, 2016) (citing *Garcia v. State Univ. of N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001)). Plaintiff's arguments to the contrary, including his position that SUNY's acceptance of federal funds constitutes a waiver, and that the language of the ADA supports abrogation, *see* Dkt. No. 11-1 at 13-15, contradicts extensive precedent in this Circuit finding that New York has never waived its immunity against

8

suits under the ADA, and that Congress has not validly abrogated sovereign immunity under the ADA. *See Penird*, 2021 WL 3077853, at *4.

Plaintiff argues that the *Ex Parte Young* exception applies and preserves some of his claims. Defendants argue that "Plaintiff's claim is primarily asserted against the SUNY Defendants for money damages" and therefore, the *Ex Parte Young* exception does not apply. Dkt. No. 12 at 9. But Defendants ignore that the Complaint and Plaintiff's response include several requests for relief which explicitly seek forward-facing relief from the Court, including 1) orders pertaining to the Fire Safety Office's management and training, and the firing of Defendant Fletcher, s*ee* Dkt. No. 1 at 18 ¶¶ H-K, 2) an order requiring implementation of ADA accommodations, and 3) reinstatement, *see* Dkt. No. 11-1 at 6. The Court must assess whether these requests for relief are appropriate under the *Ex Parte Young* exception.

First, to the extent that Plaintiff seeks an order requiring the SUNY Defendants to improve training and management programs in the Fire Safety Office and to fire Defendant Fletcher, Plaintiff's claims are not covered by the *Ex Parte Young* exception. Such requests are not expressly directed towards ongoing violations of the ADA, but instead, seek to improve the efficacy of Plaintiff's prior workplace. "[T]he *Ex Parte Young* exception extends only to violations of federal law[,]" and therefore, Plaintiff's requests for orders mandating changes in management, personnel, and training policies fall outside of its scope. *Campbell*, 585 F. Supp. 3d at 203. More fundamentally, however, such requests are expressly directed towards the SUNY Defendants, not Defendant Fletcher, and thus, are not protected by the *Ex Parte Young* exception. *See Salvana*, 2022 WL 17083088, at *4.

Second, to the extent that Plaintiff seeks an order requiring that the SUNY Defendants implement ADA accommodations, Plaintiff does, at least, identify an alleged ongoing violation of

9

federal law.  However, such a request is, again, directed toward the SUNY Defendants and not toward Defendant Fletcher in his official capacity, and is thus outside of the scope of the *Ex Parte Young* doctrine.  To the extent that Plaintiff seeks an order requiring *that Defendant Fletcher*, in his official capacity, implement ADA accommodations which have been "properly requested" and accepted by the SUNY Defendants, Plaintiff successfully identifies both an alleged violation of federal law and an appropriate defendant.  Indeed, drawing all reasonable inferences, Plaintiff alleges that SUNY Albany "accepted" certain of Plaintiff's requests for accommodations, but that Defendant Fletcher refused to implement the institutionally accepted accommodations.  *See* Dkt. No. 11-1 at 5.  But by virtue of Plaintiff's termination, and without reinstatement, such relief would not "remedy a future violation [of the ADA] *directed at [Plaintiff.]*"  *Jackson v. Battaglia*, 63 F. Supp. 3d 214, 220-21 (N.D.N.Y. 2014) (emphasis added).

Third, at first glance, Plaintiff's last-minute request for reinstatement appears to fall under the *Ex Parte Young* exception.  "[C]laims for reinstatement to previous employment satisfy the *Ex Parte Young* exception to the Eleventh Amendment's sovereign immunity bar."  *Rowland*, 494 F.3d at 96.  But crucially, Plaintiff seeks to be reinstated only "if and when proper training is provided."  Dkt. No. 11-1 at 6.  Plaintiff does not clarify what "proper training" entails.  The Complaint discusses both broad training deficiencies and the Defendants' failure to implement training accommodations tailored to address Plaintiff's requests under the ADA.  However, given that the Complaint also expressly requests an order directing *the SUNY Defendants* to "ensure that the campus fire safety program have proper training *for any and all employees*[,]" the Court cannot reasonably read Plaintiff's condition of "proper training" to solely include the implementation of his ADA accommodations by Defendant Fletcher.  Dkt. No. 1 at 18.  Instead, Plaintiff's submissions make clear that his reinstatement request is conditioned, at least in part, on broader

10

changes, made at the University level. As discussed above, relief demanding that the SUNY Defendants implement changes, and relief that falls outside Defendant Fletcher's authority, is inappropriate under the *Ex Parte Young* doctrine. Therefore, even drawing all reasonable inferences, the Court is unable to provide the conditional reinstatement relief Plaintiff seeks.

As a result, the *Ex Parte Young* exception is inapplicable, and Plaintiff's claims against the SUNY Defendants and Defendant Fletcher in his official capacity must be dismissed. Because the *Ex Parte Young* doctrine does not apply to claims against the SUNY Defendants under any circumstances, the claims against them are dismissed with prejudice. However, the Court dismisses the claims against Defendant Fletcher in his official capacity without prejudice.

### B. Rule 12(b)(6) - Suits Against Individuals Under the ADA

To the extent that Plaintiff asserts claims against Defendant Fletcher *in his individual capacity*, such claims must be dismissed for failure to state a claim. Titles I and V of the ADA "do not provide for actions against individual supervisors." *Darcy v. Lippman*, 356 Fed. Appx. 434, 437 (2d Cir. 2009); *Yerdon*, 120 F.4th at 1155-56 (finding that "individual employees cannot be held liable under" both Title I and Title V of the ADA). Plaintiff's arguments to the contrary contradict extensive law in this Circuit. *Id.*; *see also Murray v. Tanea*, 357 F. Supp. 3d 226, 230 (W.D.N.Y. 2019) ("Many cases from this and other circuits have held that individuals cannot be held personally liable for damages under the ADA, regardless of which title of the ADA is at issue."). Because Defendant Fletcher may not be sued under the ADA in his individual capacity under any circumstances, such claims are dismissed with prejudice.

### V. CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Defendants' motion to dismiss, Dkt. No. 9, is **GRANTED**; and the Court further

11

**ORDERS** that the claims against the SUNY Defendants are **DISMISSED with prejudice**; and the Court further

**ORDERS** that the claims against Defendant Fletcher in his individual capacity are **DISMISSED with prejudice**; and the Court further

**ORDERS** that claims against Defendant Fletcher in his official capacity are **DISMISSED without prejudice**; and the Court further

**ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.[5]

**IT IS SO ORDERED.**

Dated: August 20, 2025
Albany, New York

Anne M. Nardacci
U.S. District Judge

---

[5] The Clerk shall also provide Plaintiff with copies of all unreported decisions herein.